Joan Rance VUYANICH

v.

REPUBLIC NATIONAL BANK
OF DALLAS.

Ellen JOHNSON

v.

REPUBLIC NATIONAL BANK
OF DALLAS.

Nos. CA3–6982–G, CA3–7949–G.

United States District Court,
N. D. Texas,
Dallas Division.

Aug. 4, 1981.

JoAnn Peters, Anderson & Peters, Dallas, Tex., for Vuyanich.

Linda N. Coffee, Palmer, Palmer & Coffee, Dallas, Tex., for Johnson.

Richard L. Arnold, Tobolowsky & Schlinger, Dallas, Tex., for intervenor Fenton.

Wayne S. Bishop, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., for defendant.

## MEMORANDUM OPINION

PATRICK E. HIGGINBOTHAM, District Judge.

In its opinion filed October 22, 1980,[1] this Court found phase one liability under Title VII for certain of defendant's practices. Thereafter, the Court invited counsels' comment regarding the recent decision of the Supreme Court in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (*"Burdine"*). The Bank has responded with a request for reconsideration of all but one liability finding. The accused findings are:

### Hiring

1. Liability for black applicants for non-exempt positions, 1969–1973;
2. Liability for female applicants for exempt positions before December 31, 1974;

### Compensation

3. Liability for all blacks from 1973 to date;

### Initial Placement and Promotion

4. Liability for non-exempt blacks and females for all years;
5. Liability for exempt blacks from 1973 to date of trial.

I turn to the applicability of *Burdine* to these findings.

### Burdine

The language and holding of *Burdine* must be read against the backdrop of Supreme Court Title VII precedent in order properly to assess its impact on this case. The risk of misinterpretation and misapplication is great where decisional context is ignored. At the outset, then, *Burdine's* place in the hierarchy of Supreme Court Title VII decisions must be established.

*Burdine* represents a refinement and clarification of the Court's holding in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (*"McDonnell Douglas"*). In *McDonnell Douglas,* the Court considered "... the order and allocation of proof in a *private, non-class action* challenging employment discrimination." *Id.* at 800, 93 S.Ct. at 1823. (emphasis added). It first set out the elements required to establish a prima facie case in a

---

1. *Vuyanich v. Republic National Bank of Dallas,* 505 F.Supp. 224 (1980).

single-plaintiff, treatment suit.[2] The Court next explained that if a prima facie case is made out, "[t]he burden then must shift to the employer to articulate some legitimate, non-discriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. In so holding, the Court rejected the Court of Appeals' decision that "subjective," non job-related criteria for rejection carried "little weight" in rebutting a prima facie case. *Id.* at 803,[3] 93 S.Ct. at 1824–1825. If the employer articulates a non-discriminatory reason for the decision, the Court continued, the complainant must then be given a full and fair opportunity to prove that the stated reason was in fact pretext, a cover-up for a racially motivated decision. *Id.* at 804–805, 93 S.Ct. at 1825–1826.

Anticipating the risk of future confusion, the Court took pains to limit its holding in *McDonnell Douglas*. First, in delineating the elements of a prima facie case, the Court cautioned in footnote 13:

> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [a complainant] is not necessarily applicable in every respect to differing factual situations. *Id.* at 802, 93 S.Ct. at 1824.

Second, the Court took care to emphasize that where employment practices are challenged in a disparate impact, class action suit such as *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), "proof" of job-relation would still be required to rebut a prima facie case. In footnote 14, the Court stated:

> We note that the issue of what may properly be used to test qualifications for employment is not present in this case. Where employers have instituted employment tests and qualifications with an exclusionary effect on minority applicants, such requirements must be "shown" to bear a demonstrable relationship to successful performance of the jobs for which they are used, *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 [91 S.Ct. 849, 853, 28 L.Ed.2d 158] (1971). *Castro v. Beecher*, 459 F.2d 725 (CA 1 1972); *Chance v. Board of Examiners*, 458 F.2d 1167 (CA 2 1972). *Id.* at 802, 93 S.Ct. at 1824.

The *McDonnell Douglas* decision thus left undisturbed the allocation and burden of proof established in *Griggs* for disparate impact, class action cases.

Three years later, in *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("Teamsters"), the Court expressly rejected the argument that *McDonnell Douglas* set forth the only proof sequence for a prima facie case under Title VII. "Our decision in that case," the Court stressed in *Teamsters*, "did not purport to create an inflexible formulation." *Id.* at 358, 97 S.Ct. at 1866. The Court further explained:

> The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act. *Id.* at 358, 97 S.Ct. at 1866.

*Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) was cited as an application of the broad principle of *McDonnell Douglas* in the context of a class action. There, the Court noted, demonstration by plaintiffs of a discriminatory hiring pattern-or-practice was sufficient "... to infer that individual hiring decisions were made in pursuit of the

---

2. A complainant need only show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802, 93 S.Ct. at 1824.

3. Whether the employer's explanatory burden on rebuttal was one of persuasion, rather than mere "articulation," was a question arguably left open. When reversing the Fifth Circuit in *Burdine*, however, the Court denied the existence of any ambiguity on this point. *See Burdine, supra*, 450 U.S. at 257–58, 101 S.Ct. at 1096, 67 L.Ed.2d at 218.

discriminatory policy and to require the employer to come forth with evidence dispelling that inference." *Id.* at 359, 97 S.Ct. at 1867.

The Court then described the application of *McDonnell Douglas* to pattern-or-practice suits where the Government proves discrimination by statistical means, and where proof of discriminatory motive is not required. *See generally, id.* at 335, n.15, 97 S.Ct. at 1854, n.15. In terms equally applicable to class plaintiffs in the type of across-the-board suit at issue in this case, the Court stated:

> At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant. *Id.* at 360, 97 S.Ct. at 1867.

By footnote, the Court further distinguished the type of rebuttal proof required of an employer in a class action case from that required in the type of single-plaintiff treatment case before the Court in *McDonnell Douglas v. Green* :

> The employer's defense must, of course, be designed to meet the prima facie case of the Government. We do not mean to suggest that there are any particular limits on the type of evidence an employer may use. The point is that at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking. While a pattern might be demonstrated by examining the discrete decisions of which it is composed, the Government's suits have more commonly involved proof of the expected result of a regularly followed discriminatory policy. In such cases the employer's burden is to provide a non-discriminatory explanation for the apparently discriminatory result. *Id.* at 360, n.46, 97 S.Ct. at 1867, n.46.

Assuming the inference of discrimination is not dispelled at the phase one liability stage, the Court observed, the employer will have an additional opportunity at the relief phase of the trial " . . . to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons," albeit bearing a burden of proof, rather than mere production. *Id.* at 362, and n.50, 97 S.Ct. at 1868, and n.50.

In *Burdine*, the Court returned to the question of burden of proof. It made clear that the burden of persuasion always remains with the plaintiff; that the prima facie case only shifts the burden of producing evidence. *Id.* 450 U.S. at 255, 101 S.Ct. at 1094, 67 L.Ed.2d at 216.

As in *McDonnell Douglas*, the fact base was a single-plaintiff treatment case. The Court explained that if a defendant stands silent in the face of the prima facie case described in *McDonnell Douglas*, the trial court may enter judgment based upon plaintiff's proof. At the same time, the defendant's evidence need only raise a fact issue; it does not have the burden of persuading the court that its proof actually will carry the day. To rebut the *McDonnell Douglas* four-part prima facie case, the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* 450 U.S. at 257, 101 S.Ct. at 1096, 67 L.Ed.2d at 218. While the defendant need only raise a question of fact, however, " . . . the explanation of its legitimate reasons must be clear and reasonably specific." *Id.* If the defendant carries its burden of production, the Court continued, the burden then shifts to the complainant to prove that the non-discriminatory reasons were pretextual, either by showing that discrimination more likely motivated the employer, or by showing that the employer's proffered explanation is unworthy of credence. *Id.* 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217.

Once again, the Court endeavored to limit the context of its holding. In footnote 15, it reiterated:

We have recognized that the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes. *See McDonnell Douglas, supra,* 411 U.S. at 802, n.14, [93 S.Ct. at 1824, n.14]; *Teamsters v. United States,* 431 U.S. 324, 335–336, and n.15, [97 S.Ct. 1843, 1854–1855, 52 L.Ed.2d 396 and n.15] (1977).

As to the order of proof, the Court explained that the three-part sequence of (1) prima facie case, (2) non-discriminatory explanation, and (3) demonstration of pretext, was "... intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Id.* 450 U.S. at 255, n.8, 101 S.Ct. at 1094 n.8, 67 L.Ed.2d at 216, n.8. But it cautioned as in *McDonnell Douglas* and *Teamsters,* that the order of proof might vary according to the character of the evidence presented. In footnote 10, the Court stated:

In saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. *Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.* *Id.* 450 U.S. at 255, 101 S.Ct. at 1095, 67 L.Ed.2d at 216. (emphasis added).

The essential point of the decision in *Burdine,* the Court made clear, was that the plaintiff retains the burden of persuasion throughout. The Fifth Circuit's requirement that a defendant on rebuttal must prove its non-discriminatory explanation by a preponderance of the evidence was rejected as an impermissible shifting from plaintiff to defendant of the burden of ultimate persuasion.

### Burdine in Perspective

The Bank understandably reads much into the *Burdine* decision. But significant distinctions immediately come to mind which preclude an over-expansive reading of the case. Indeed, the applicability of the sequential pattern of proof of *McDonnell Douglas* to other than treatment cases of the factual genre of *McDonnell Douglas* is questionable. *Burdine* does not teach the contrary.

First, Justice Powell in *Burdine* explained the purpose of the prima facie proof standards in terms inapposite to impact cases where the defensive burden is to prove business necessity:

In a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of "intentional discrimination." *Burdine, id.* 450 U.S. at 255, n.8, 101 S.Ct. at 1094 n.8, 67 L.Ed.2d at 216, n.8.

But, intent is not an element of impact cases. *Teamsters, supra,* 431 U.S. at 335–336, n.15, and 349, 97 S.Ct. at 1854–1855, n.15 and 1861; *Griggs v. Duke Power Co., supra,* 401 U.S. at 430–432, 91 S.Ct. at 853–854. Instead, a practice that disparately disadvantages qualified minorities is illegal regardless of subjective intent, unless "necessary" to the business. *Cf. Griggs v. Duke Power Co., id.* at 432, n.8, 91 S.Ct. at 854, n.8. And "business necessity" is an affirmative defense. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). Thus, in an impact case, the plaintiff at all times has the burden of persuasion in proving impact and a defendant at all times has the burden of persuasion in proving the business necessity of any practices relied upon to explain the impact, or proved by the plaintiff disparately to disadvantage protected groups.

Second, *Burdine* is limited by the factual context in which it was decided. The simple prima facie case considered in *Burdine* initiates the search for discriminatory motive by eliminating "... the most common non-discriminatory reasons for the plaintiff's rejection." *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 215–216. Once the plaintiff has eliminated such reasons, the Court explained, the defendant must clearly articulate a legitimate, non-discriminatory explanation for the result in order to dispel the inference of discrimination generated by the prima facie case. It follows that what are common, non-discriminatory reasons for plaintiffs treatment will vary with the factual context of the case. Similarly, the character of the evidence required to establish a prima facie case, and rebut it, will vary according to the case. Cognizant of this reality, the Court in both *McDonnell Douglas, supra,* 411 U.S. at 802, n.14, 93 S.Ct. at 1824, n.14, and *Teamsters, supra,* 431 U.S. at 335–336, and n.15, 97 S.Ct. at 1854–1855, and n.15, warned against mechanically transposing the *McDonnell Douglas* model of prima facie proof to other types of cases. It did so again in *Burdine*:

> We have recognized that the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminating impact on protected classes. 450 U.S. at 252, n.5, 101 S.Ct. at 1093, n.5, 67 L.Ed.2d at 215, n.5.
>
> In *McDonnell Douglas, supra,* we described an appropriate model for a prima facie case of racial discrimination.... We added, however, that this standard is not inflexible, as "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations." 450 U.S. at 256, n.6, 101 S.Ct. at 1094, n.6, 67 L.Ed.2d at 215, n.6.

These repeated statements eschewing a mechanistic transposition of the prima facie construct established in *McDonnell Douglas* are not lightly to be ignored.

Placed in perspective, *Burdine's* main contribution to the line of Title VII decisions discussed above was to redirect lower courts that had drifted from the original course that the ultimate burden of persuasion is always upon the plaintiff. *Burdine, id.* 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. Just how this burden may be met, the Court emphasized in the *Teamsters* pattern-or-practice case, will vary according to the nature of the case. *Teamsters, supra,* 431 U.S. at 358–362, 97 S.Ct. at 1866–1868. The sequence of proof described in *Burdine,* therefore, is not an "inflexible formulation." *Cf. id.* at 358, 97 S.Ct. at 1866.

The *Burdine* construct contemplates an initial thrust by a plaintiff, a parry by a defendant, followed by a traditional fight with the burden on the challenger. And such a sequence will indeed occur when a complainant either chooses to so play or is forced to so proceed because he has only the evidentiary strength for the first thrust or is unable to anticipate the nature of the parry. This sequential model works well in the context of a simple, single-plaintiff treatment case by determining the result where a defendant offers no explanation, or where the defendant does explain, but the plaintiff fails to discredit the explanation. The model works poorly, if at all, where a plaintiff class loads overwhelming force into its opening shot. *See, e. g. Teamsters, supra,* 431 U.S. at 342–343, 97 S.Ct. at 1858–1859. In a complex class action, utilizing statistical proof and counterproof, the value of the *Burdine* sequence—to highlight the issues in contest—is about as relevant as a minuet is to a thermonuclear battle.

By design, *Burdine* did nothing to undermine the efficacy of the alternative proof sequences approved in *Franks v. Bowman Transportation Co., supra,* and *Teamsters, supra.* In those class action cases, the plaintiff's prima facie case was established by showing a broad pattern-or-practice of discrimination. The offensive thrust in *Teamsters,* for example, involved statistical "proof of the expected result of a regularly

followed discriminatory policy." *Teamsters, supra,* 431 U.S. at 360, n.46, 97 S.Ct. at 1867, n.46. The plaintiff's initial proof of discrimination was sufficient to meet the burden of persuasion, the Court stated, where the defendant's attempts to rebut the conclusion and discredit the statistical evidence were inadequate. *Id.* at 342, and n.24, 97 S.Ct. at 1858 and n.24. The Government was not required to proffer, in a third step, additional proof of pretext to meet the defendant's explanation, as contemplated in the single-plaintiff model discussed in *McDonnell Douglas* and *Burdine.* And in *Burdine,* the Court expressly reaffirmed that defendant's articulation of a non-discriminatory explanation does not necessarily defeat the plaintiff's case where the explanation is not "satisfactory" or where the plaintiff's ". . . initial evidence, combined with effective cross-examination of the defendant, [suffices] to discredit the defendant's explanation." *Burdine, supra,* 450 U.S. at 255, n.10, 101 S.Ct. at 1095, n.10, 67 L.Ed.2d at 216, n.10. *See also, Robbins v. White-Wilson Medical Clinic, Inc.,* 642 F.2d 153 (5th Cir. 1981) *opinion withdrawn* 645 F.2d 252 (5th Cir. 1981). Thus, the Bank is incorrect in arguing that it necessarily defeated the plaintiff's prima facie case by presenting its own statistical model in rebuttal. That proposition ignores the potential probative force of a complainant's initial proof as well as the need for a defendant to produce "adequate" rebuttal evidence, tailored to the complainant's offensive proof.

In sum, *Burdine* harkens little change, if any, in the nature and sequence of proof required in a Title VII class action case, particularly one alleging disparate impact, or proving discriminatory treatment by statistical means. Placed in perspective, the significance of *Burdine* is its insistence that the ultimate burden of proof be placed on the complainant. As the Fifth Circuit recently observed in its post-*Burdine* decision in *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1071 (5th Cir. 1981), "[t]he terms 'prima facie case' and 'pretext' are not magical . . .": what is important is whether the trial court "examined the pertinent facts and ultimately applied the proper burden of proof. . . ." That is the ultimate inquiry here.

### Burdine and the Math Models

■ There is nothing unique about the sequence and burden of proof in a pattern-or-practice suit based on statistical presentations. Where disparate impact is the claim, the plaintiff may attack a specific test or general personnel practice or custom as disparately eliminating members of a protected group. In such a case, the defense can proceed at two levels. First, it can contend that the plaintiff has failed to prove impact, for example, for reasons of flawed statistical method, or incorrect choices of comparative samples such as the definition of the labor market. Discussion of a prima facie case of "impact" here has little meaning. The burden is upon the plaintiff to prove impact by a preponderance of the evidence. A failure of the defendant to "rebut" this case is no more than an inability to overcome the proof of disparate impact. In addition, a defendant may attempt to "justify" the disparate impact by proof of business necessity. This is an affirmative defense for which the burden of persuasion is upon the defendant. *See supra* at p. 660. Such is the teaching of *Griggs* and its progeny for which *Burdine* directs no change.

Rather than attacking a specific eligibility rule, test or practice, a class in an impact case alternatively may offer proof that the racial composition of defendant's workforce so fails to reflect the composition of available qualified applicants in the relevant labor market that the sum of its practices is flawed. As in the first case, the defendant can attack the effort to prove impact by discrediting the methodology and reliability of plaintiff's proof, or it can present an affirmative defense by demonstrating that the disparate results are attributable to neutral personnel rules, customs or practices such as a degree requirement or skill requirement. Again, the defendant must prove the business necessity of its requirements.

The only difference in the two sequences is that, in one, the plaintiff identifies the specific personnel rule or custom and challenges it, while in the other, the defendant identifies the rule or custom and attempts to defend it. In both situations the burden of proving discrimination is upon the plaintiff while the burden of persuading the court of business necessity is upon the defendant.

There is also nothing startling about statistical proof of across-the-board discriminatory treatment in a class action case, though it differs in sequence from the simple prima facie model considered in *McDonnell Douglas* and *Burdine*. The plaintiff in a class treatment case attempts to prove, through statistics, that the defendant considered group status when making its employment decisions. The plaintiff attributes the observed results of the defendant's decisions to group status considerations by excluding statistically all other relevant considerations. Group status as a ground for decision is isolated by "controlling for" the other possible non-discriminatory reasons for the decision. This is akin to what the Court in *Burdine* described as "[eliminating] the most common non-discriminatory reasons for the decision." *See Burdine, supra,* 450 U.S. at 252–254, 101 S.Ct. at 1093–1094, 67 L.Ed.2d at 215–216. Except here, the plaintiff, if successful, eliminates *all* the non-discriminatory, job-related reasons offered by the defendant as the basis for its decisions.

This type of proof goes far beyond the simple prima facie case considered in *McDonnell Douglas* and *Burdine*. The initial thrust combines the first and third steps of the *Burdine* model by demonstrating discrimination against protected groups, and pretext, at the same time. By requiring the plaintiff's statistics to be meaningful and convincing, the ultimate burden of proving discrimination is placed on the plaintiff.

Necessarily, the defendant's rebuttal evidence will differ from that described in *Burdine*. The defendant can no longer rebut the plaintiff's prima facie case merely by articulating a non-discriminatory explanation for its decisions. That stage has already passed if the plaintiff's statistical model has successfully anticipated and eliminated the non-discriminatory reasons proffered by the defendant. The defendant must offer defensive evidence tailored to the plaintiff's initial proof. It can attempt to discredit the plaintiff's statistics by demonstrating flaws in the assumptions, data or analyses presented, or it can offer countervailing statistical evidence to show that only non-discriminatory criteria guided its employment decisions.

Where the ultimate issue has been so joined, however, the defendant's evidence must do more than merely raise an issue of fact. That standard is only appropriate for the second stage of the *Burdine* model where the plaintiff has not yet discredited, or otherwise addressed, the defendant's non-discriminatory explanation for the challenged decision. Where the plaintiff has through its initial proof presented persuasive evidence that the non-discriminatory reasons articulated by the defendant are pretextual, the defendant's evidence must go further. It must cast sufficient doubt on the plaintiff's proof to cause the trier of fact to conclude that the plaintiff has not proved discrimination by a preponderance of the evidence. *Burdine* did nothing to alter this common allocation of burden in a civil suit.

I turn now to the nature of the evidence presented in this case. The Plaintiffs challenged the Bank's employment decisions in the areas of hiring, compensation, initial placement and promotion, and termination. In the areas of compensation and initial placement and promotion, Plaintiffs sought to prove discriminatory treatment directly. *See, id.* at 279–298 (compensation); 319–330 (initial placement and promotion). Plaintiffs based their hiring case on a disparate impact analysis. *See* 505 F.Supp. at 354–362. The Court's findings on treatment and impact are reevaluated, seriatim, in light of *Burdine* to determine whether any modification of result is required.

*The Findings of Discriminatory Treatment in Compensation and Initial Placement and Promotions*

The battlefield upon which the treatment controversy raged was job productivity. The Bank maintained that its compensation, placement, and promotion decisions were based upon individual productivity differences, or upon indicators of productivity. Accepting productivity as the fundamental theory behind the Bank's employment decisions, the Plaintiffs argued that the Bank considered, *in addition*, the racial and sexual group status of the individual. The Bank countered that it did not. *See* 505 F.Supp. at 262.

At the outset, the lines of battle were drawn in terms unrelated to the nature of the evidence before the Court in *Burdine.* The weapons chosen were the tools of econometrics; principally quantitative techniques involving multiple regressions. The Plaintiffs attempted to prove, and for some job categories did prove that group status, rather than productivity differences, was the factor accounting for the results of the Bank's employment decisions. They did so by analyzing the Bank's employment decisions controlling for observable characteristics which a productivity-minded employer might use as predictors of productivity. *Id.* at 265. Plaintiffs, through their initial proof, attempted to eliminate productivity factors as the sole bases for the Bank's employment decisions. Through sophisticated regression analyses, Plaintiffs, in fact, were able to shed direct light upon the extent to which group status affected the Bank's employment decisions, holding productivity considerations constant. This, then, was the very case anticipated in *Burdine* where the "... initial evidence, combined with effective cross-examination, will suffice to discredit the defendant's explanation." *Burdine, supra,* 450 U.S. at 255, n.10, 101 S.Ct. at 1095, n.10, 67 L.Ed.2d at 216, n.10.

The Bank did not meet Plaintiff's proof by articulating a non-discriminatory reason not already anticipated by Plaintiff's statistical models. Rather, the Bank offered countervailing math models which it claimed established productivity as the sole criteria for its employment decisions. Both parties attempted, sometimes successfully, other times not, to discredit the other's proof by demonstrating flaws in the assumptions and statistical analyses presented. Compared to *Burdine's* model of thrust, parry and engage, this was statistical blitzkrieg versus jihad.

The only possible *Burdine* attack is that the Court somehow placed an impermissible burden of persuasion upon the Bank in those instances where it found that the Bank had failed to rebut Plaintiffs' initial proof. Before discussing the Bank's specific objections, however, it is helpful to recall the burden I actually placed on the Bank. After discussing the use of the phrase "prima facie case," I stated:

> Whether rebuttal taking the form of an attack on the validity of the plaintiff's statistical approach is characterized as a defense to an already established *prima facie* case, or as a factor preventing a *prima facie* case from ever coming into existence, is a matter of semantics. Regardless of how such proof is characterized, "[t]he plaintiffs statistics need only be shown incompetent and unreliable to defeat them." [citation omitted]. If this is done, the burden of showing job-relatedness never arises. *Id.* at 357 n.170.

This defensive burden is no greater than that imposed in *Teamsters* where the Court evaluated whether the defendant had successfully attacked the Government's statistical evidence, 431 U.S. at 342, n.23, 97 S.Ct. at 1858, n.23, or alternatively, had come forth with evidence "dispelling the inference" that individual hiring decisions were made in pursuit of the employer's discriminatory policies. *Id.* at 359, 97 S.Ct. at 1866.

The Bank reasons that, under *Burdine,* it needed only to raise a genuine issue of fact regarding the sufficiency of the Plaintiffs' statistical models to rebut Plaintiffs' prima facie case. Defendant argues that the Court placed an excessive burden on the Bank when it held that:

(1) To challenge a model successfully, the defendant must do more than point to possible sources of error which would bias the modeling result.

\*　　\*　　\*　　\*　　\*　　\*

(a) unless egregious, the error must be systematic;

\*　　\*　　\*　　\*　　\*　　\*

(b) there must be actual rather than a theoretical bias;

\*　　\*　　\*　　\*　　\*　　\*

(c) the bias must be of the type and extent that the "modeling results as to the presence or absence of discrimination are likely to be unreliable." *Id.* at 306–307.

▮ I do not believe the Bank's position to be well taken. Where a plaintiff presents direct evidence of discrimination with a probative force calculated to eliminate articulated non-discriminatory reasons for the challenged employment decision, only raising an issue of fact does not necessarily rebut the plaintiff's case. We never move through the *Burdine* sequence where the issue of explanatory reasons is addressed by a plaintiff's initial proof and the plaintiff has not relied upon the assistance of the sequence. Thus, in requiring the Bank to demonstrate material flaws in the Plaintiffs' modeling, no impermissible burden was placed on the Defendant. *Cf. Teamsters, supra*, 431 U.S. at 342, n.23, 97 S.Ct. at 1858, n.23. Pulled from the lexicon of econometrics and statistics, the Court did no more than require that the Bank's attempts to discredit the plaintiff's statistical proof be adequate, such that, when all the evidence was summed, plaintiff's proof did not achieve the level of persuasion. The Court's holding in *Burdine*, therefore, was not contravened.

Similarly, the Bank failed to show that its independent statistical analysis controverted Plaintiffs' proof that the Bank discriminated against categories of blacks in compensation, and blacks and females in initial placement and promotion. The reasons why the Bank's analyses were unconvincing or statistically inadequate are discussed in the relevant sections of the main opinion and do not warrant repeating here. Suffice it to say that, in requiring the Defendant's statistical modeling to be valid and relevant, the allocation of burdens dictated in *Burdine* was not disobeyed. Even *Burdine*, if applicable, requires that the defendant's explanation be "clear and reasonably specific." *Burdine, supra*, —— U.S. at ——, 101 S.Ct. at 1096, 67 L.Ed.2d at 218. The Bank failed to meet this burden in those instances where liability for discriminatory treatment was found.

### *The Findings of Disparate Impact from the Bank's Hiring Practices*

As earlier discussed, *Burdine* does not affect the allocation or order of proof in an impact case. Its only possible relevancy is in mandating that a plaintiff bear the ultimate burden of persuasion throughout.

Plaintiffs' challenge to the Bank's hiring policies was based upon a disparate impact theory. Both parties' proof on the question of discriminatory hiring consisted of a series of statistical comparisons of the proportions of minorities and females in the Bank's workforce and its new hires during the class period and the corresponding proportion of minorities and females in appropriate segments of the general labor market. *Id.* at 344–354. Plaintiffs' regressions demonstrated statistically significant underhiring of blacks in non-exempt categories from 1969–1973 and of females in exempt categories from 1969–1978. *Id.* at 354–362. The Bank's attempt to discredit Plaintiffs' statistics was unsuccessful. *Id.* at 360–361. Plaintiffs, therefore, proved by a preponderance of the evidence that the Bank's hiring practices disparately disadvantaged certain categories of black and female job applicants.

The Bank then attempted to show statistically that its desire to hire "qualified" individuals provided a non-discriminatory explanation for the disparities proved by Plaintiffs. Where the Bank was successful, I required it to show, in addition, that the job standards upon which it was relying were job-related:

... the Bank continues to bear the burden of showing that its educational and occupational preferences 'have a manifest relationship to the employment in question,' and that diplomas (and work histories) are indeed the 'useful' servants the Supreme Court envisioned they would be. *Cf. Griggs v. Duke Power Co., supra,* n.38, 401 U.S. at 432–33, 91 S.Ct. at 854. *Id.* at 374.

Presumably, the Bank does not contend that *Burdine* has *sub silentio* overturned the holding in *Griggs* that the employer bears the burden of proving business necessity to legitimize hiring requirements that disparately fail blacks or females. If so, as earlier noted, I disagree.

I accepted the business utility of the Bank's job groupings, but found deficiencies in the proof of business necessity of the proffered hiring requirements for non-exempt positions.[4] *Id.* at 376–379. For example, I found:

> The flaw in the weightings used for non-exempt hiring is that the Bank presented no evidence to demonstrate the job-relatedness of the weights as hiring criteria." *Id.* at 378.

And I noted:

> The Bank's failure to show the job-relatedness of its occupational and educational weights is alone sufficient to warrant rejection of its rebuttal evidence as to black non-exempt hiring. *Id.* at 378.

The Bank, however, did mount a successful defense by proving the job-relatedness of its hiring criteria for female applicants for exempt positions from 1975–1978.[5]

The Court's treatment of disparate impact and business necessity was simply a direct application of *Griggs* in a statistical context. I do not believe that the placement upon the Bank of the consequence of deficiencies in meeting its burden of proving job-relatedness is inconsistent with or related to the teaching of *Burdine*. To the contrary, it is required by *Griggs*.

---

**4.** I also found suspect the Bank's use of the Dallas/Fort Worth SMSA, rather than the City of Dallas SMSA, as the relevant labor market for non-exempt hiring. *Id.* at 378–379.

## Conclusion

■ I am not persuaded that *Burdine* alters the finding of Phase One liability. *Burdine* reminds that the ultimate risk of non-persuasion remains upon a plaintiff. That risk never shifted in this case. Accordingly, the findings of liability will be left undisturbed.

## DECREE

This case came on before the Court, sitting without jury, in October and November of 1979, limited to the subject of liability only. That subject having been heard and duly tried, and a Memorandum Order having been filed by the Court on October 22, 1980, it is now Adjudged, Ordered and Decreed as follows:

## I.

## GENERAL

1. The Defendant, REPUBLIC NATIONAL BANK OF DALLAS, is found to have discriminated in certain respects against subclasses of black and female employees of, and black and female applicants for employment with, the Defendant because of their race or sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Defendant is also found not to have discriminated in certain other respects against other subclasses of blacks and females under Title VII.

## II.

## THE CLASS AND SUBCLASSES

2. This Court has previously certified this action as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The class of Plaintiffs was divided into the following subclasses pursuant to Rule 23(c)(4)(B) of the Federal Rules of Civil Procedure:

---

**5.** The Bank's own figures revealed statistically significant underhiring of females for 1970–1974. *Id.* at 379, 385.

(a) Blacks and females who were exempt employees of the Defendant Bank at any time during the period February 16, 1969 to and including October 14, 1979;

(b) Females who were nonexempt employees of the Defendant Bank at any time during the period February 16, 1969 to and including October 14, 1979;

(c) Blacks who were nonexempt employees of the Defendant Bank at any time during the period February 16, 1969 to and including October 14, 1979;

(d) Blacks and females who applied unsuccessfully for exempt positions at the Defendant Bank during the period February 16, 1969 to and including October 14, 1979;

(e) Blacks who applied unsuccessfully for nonexempt positions during the period February 16, 1969 to and including October 14, 1979; and

(f) Females who applied unsuccessfully for nonexempt positions during the period February 16, 1969 to and including October 14, 1979.

This last subclass, identified in subparagraph (f) above, was decertified by the Court in *Vuyanich v. Republic National Bank*, 82 F.R.D. 420, 438 (N.D.Tex.1979) and its members, therefore, are not subject to the terms of this Decree.

## III.

### GRANTING AND DENIAL OF CLASS INJUNCTIVE RELIEF

The Court's findings require the granting and denial of injunctive relief as follows:

3. Defendant, its officers, agents, employees, servants and all persons acting in concert or participation with them, are hereby permanently enjoined and restrained from discriminating in the respects described below:

(a) Against female nonexempt employees in initial placement and promotions;

(b) Against black nonexempt employees in initial placement and promotions and in compensation; and

(c) Against black exempt employees in initial placement, promotion and compensation practices.

4. While Defendant is found to have discriminated against certain subclasses of blacks and females, as described below, in the early years covered by this litigation, injunctive relief is denied because the absence of any findings of class discrimination in recent years militates against the present need for such relief. Injunctive relief is denied as to claims of:

(a) Discrimination in hiring against black applicants for nonexempt positions;

(b) Discrimination in hiring against female applicants for exempt positions; and

(c) Discrimination against pregnant female employees who were denied leave for failure to meet a three-year service requirement or who were forced to take pregnancy leave at an arbitrary stage of the pregnancy.

5. Defendant is found not to have discriminated against subclasses of applicants and employees in the following respects, and therefore the injunctive relief sought is denied as to each:

(a) Black applicants for exempt positions;

(b) Black or female employees alleging involuntary termination by the Defendant;

(c) Female exempt employees alleging discrimination in promotion and initial placement;

(d) Black exempt employees alleging discrimination in promotion and initial placement from 1969–72;

(e) Female exempt and female nonexempt employees alleging discrimination in compensation;

(f) Black exempt and black nonexempt employees alleging discrimination in compensation from 1969–72;

(g) Black and female employees, both exempt and nonexempt, alleging departmental segregation by the Defendant at any time;

(h) Female employees, exempt and nonexempt, alleging discrimination in any

of the following respects: (i) pay to employees while on maternity leave; (ii) accrual of seniority on the part of those who have been on maternity leave; (iii) requiring leave for maternity at a fixed time in the pregnancy from January 1, 1971 forward; (iv) imposing a length-of-service requirement for maternity leave from January 1, 1971 forward; and (v) application of a durational limitation for pregnancy leave;

(i) Female or black employees, either exempt or nonexempt, in marriage policy;

(j) Female or black employees, either exempt or nonexempt, in training opportunities or participation in training programs; and

(k) Black or female employees, exempt or nonexempt, in the application or enforcement of any dress requirements.

## IV.

## APPOINTMENT OF SPECIAL MASTER FOR DETERMINATION OF INDIVIDUAL RELIEF

6. All members of the subclasses as to which a finding of discrimination has been made shall be provided an opportunity to advance individual claims for backpay and priority status in a Stage II proceeding. All such claims shall be determined by reference to a Special Master, who shall be appointed pursuant to Rule 53 of the Federal Rules of Civil Procedure and who shall conduct hearings and make findings in accordance with the guidelines set forth below.

## V.

## IDENTIFICATION OF ELIGIBLE CLAIMANTS

7. Within sixty (60) days of the entry of this Decree, Defendant shall send a copy of the Notice as set forth in Appendix A, which is hereby incorporated into and made a part of this Decree, to all potential members of subclasses a) through c), as set forth in Paragraph 2 of this Decree, as limited by the identification of potential claims of discrimination in Paragraphs 17(a), 18(a), 19(a) and 21(a) of this Decree, by certified mail, return receipt requested. This Notice shall be accompanied by a copy of the Proof of Claim form as set forth in Appendix B, which is hereby incorporated into and made a part of this Decree.

Upon completion of this mailing, the Defendant shall file with the Court and serve upon the Plaintiffs a certificate of mailing, signed by a duly authorized representative of the Defendant, together with an attached listing of all persons, categorized by subclass, to whom a Notice and Proof of Claim form were mailed.

8. Simultaneously with the mailing of the copies of the Notice as specified in Paragraph 7, above, the Defendant shall cause to be published copies of the Notice and Proof of Claim form in the Legal Notices Section of the following newspapers: *The Dallas Morning News, The Dallas Times Herald, The Richardson Daily News, The Garland Daily News, The Oak Cliff Tribune, Fort Worth Star Telegram,* and the *Wall Street Journal* (S.W. edition). This publication shall be repeated in each of the above newspapers twice a week for a period of four weeks beginning with and including the initial publication date.

9. To be considered eligible to present a claim for remedial relief pursuant to this Decree, a claimant must fill out a Proof of Claim form, as set forth in Appendix B, and return it to the Master as specified in the Notice (Appendix A) by mail. The envelope containing the Proof of Claim form must be postmarked on or before a date stated in the Notice, which date shall be sixty (60) days after the mailing of the Notice provided for in Paragraph 7, above.

10. Within thirty (30) days after the expiration of the response period specified in Paragraph 9, above, the Master shall file with the Court and serve upon the parties a compilation listing alphabetically the names and addresses of all persons who have responded in timely fashion to the Notice. The Master shall make the claim forms available to the parties for copying or examination. The Master's compilation shall constitute the list of eligible claimants for

backpay and other remedial relief in the damages phase (Stage II) of this proceeding. Potential claimants not submitting Proof of Claim as specified in the above paragraphs will be forever barred from relief arising from this litigation.

## VI.

### SPECIAL MASTER'S PRELIMINARY PROCEEDINGS

11. Within thirty (30) days of the Master's notification as to the timely claimants, the Master shall convene a preliminary hearing to explore the possibilities of settlement and to determine, if necessary, the methods to be employed in the Stage II determinations. The Master's responsibility shall be to seek to place each class member in the economic position he or she would have been absent any discrimination by Defendant as found in the Stage I proceedings. The Master shall endeavor to make his determination on an individual claimant basis, but may consider utilization of judicially acceptable alternative approaches for the purpose of determining the gross amounts of backpay owing. The Master shall consider proper use of mathematical models, computer-assisted studies and other techniques that will best achieve the goals of efficiency, accuracy and reduced cost; provided, however, that any mathematical technique or model so utilized shall not be used or relied upon to excuse the obligation of each claimant, in order to obtain relief under this Decree, to meet the burdens relevant to his or her claim, as set forth in Paragraphs 17(b), 18(b), 19(b), 20(b) and 21(b) of this Decree, nor shall it operate to deprive the Defendant of an opportunity to rebut such claim in accordance with the provisions of Paragraph 22 of this Decree. The Master may conduct evidentiary hearings and order the discovery he deems appropriate to determine the method to be employed for the Stage II determination and to expedite that determination, provided the methods chosen are consistent with the requirements of this Decree and subject to the supervision of the Court.

12. Within sixty (60) days of the filing and service of the list of eligible claimants specified in Paragraph 10, above, or at such time(s) as the Master shall order, the Defendant shall make available for inspection and copying by the Plaintiffs the complete personnel record or application for employment of each eligible claimant, or both, together with such additional documents necessary to establish the claimant's employment history with the Bank, including the claimant's salary history and record of jobs held or applied for, or both, during the term period relevant to the claimant's claim group. The Master shall be empowered to rule on requests for other records or documents in connection with the hearing of any claimant's claim, subject to the guideline that such requests must be for documents directly related to the establishment or rebuttal of a claim of disparate treatment.

13. (a) At least thirty (30) days before any hearing held to adjudicate the claim of any claimant, the Plaintiffs and the Defendant shall exchange, disclose, or make available for inspection and copying by the other party all documents which each intends to introduce or rely upon in said hearing for the purpose of establishing or rebutting the claimant's claim of discrimination. This requirement shall also apply to the records of interim earnings, employment history and efforts at securing other employment, required to be produced by claimants in accordance with Paragraph 14, below.

(b) The Master may require any additional discovery found to be necessary subject to the guideline set forth in Paragraph 12, above, and subject to the further guideline that any discovery ordered under this Paragraph shall be completed without unnecessary or undue burden to either party and in accordance with time schedules approved by the Master. The Master may disapprove any discovery requests on the ground of relevancy.

## VII.

### DETERMINATION OF INDIVIDUAL CLAIMS FOR RELIEF

14. Each individual member of a subclass as to which there was a Stage I find-

ing of class discrimination is presumptively entitled to individual relief to the extent necessary to eliminate any discrimination during the periods affecting his or her subclass as found in Stage I determination. Hearings shall be held in accordance with schedules established by the Master, after consultation with counsel for the parties, to determine the claims for relief of each eligible claimant.

15. The Master shall give notice of the scheduled date and time for the hearing to each claimant. Such notice shall also contain or be accompanied by: (a) a description of the provisions of this Decree; (b) the name and telephone number of a person designated by the Master to respond to any questions that a claimant may have; and (c) a directive to the claimant to supply to counsel for the claimant's subclass at least sixty (60) days prior to the scheduled hearing the following information: (i) all records and documents in his or her possession [or a reconstruction to the best of his or her ability of such records] evidencing interim earnings (earnings, or other income, including unemployment compensation and workers' compensation payments, derived from sources other than Republic National Bank during the period relevant to the claimant's claim) and other benefits (including insurance coverage, profit sharing, pension eligibility or coverage, and other fringe benefits or perquisites such as employer-provided automobiles, employer-paid club memberships, clothing or tool allowances, or employer-provided uniforms) derived from employment by an employer other than Republic National Bank during the period relevant to the claimant's claim; (ii) a record of the claimant's employment history with employers other than Republic National Bank during the period relevant to the claimant's claim; and (iii) if unemployed during any part of the period relevant to the claimant's claim, a record of efforts to secure employment during that time. Willful failure to provide complete records as required pursuant to this Paragraph may result in the dismissal of the individual claimant's request for relief.

16. For purposes of the individual relief afforded by this Decree, the subclasses previously established by the Court shall be further divided into claim groups based upon the employment practice and year involved in the Court's determination of liability for each subclass in its Memorandum Order of October 22, 1980. In any hearing for the resolution of a claimant's claim, the claimant shall have the burden of showing that his or her claim arises out of an event occurring within the time limitations established for his or her claim group. The following paragraphs establish the criteria for each claim group and the requirements for each claimant's proof of membership within that claim group.

17. (a) With respect to claims of discrimination in compensation, persons identified in accordance with Paragraphs 9–10, above, will be divided into the following claim groups:

(i) Blacks who were employed in exempt positions at any time during the period January 1, 1973 to and including October 14, 1979; and

(ii) Blacks who were employed in nonexempt positions at any time during the period January 1, 1973 to and including October 14, 1979.

(b) Membership in the above compensation claim groups requires proof:

(i) That he or she is a black person employed in an exempt or nonexempt position at the Defendant Bank during the relevant period;

(ii) That he or she was paid less than similarly situated white employees (*i. e.,* similar qualifications and job tenure) for substantially similar work (*i. e.,* work falling within the same job classification, having apparently similar duties and responsibilities, or in the same grade or Hay point level); and

(iii) [3] An estimated factual basis or method for computing the backpay owing to the claimant—*i. e.,* the amount of money claimed that the employee would have earned absent the Bank's discrimination minus the amounts of interim earnings and deductions for the periods when the

claimant was out of the workforce voluntarily and for reasons that would have prevented him or her from working at the Bank as well; this proof requirement may change dependent upon the methods followed by the Master in any finding of gross sums due sub-groups.

18. (a) With respect to claims of discrimination in initial placement, persons identified in accordance with Paragraphs 9–10, above, will be divided into the following claim groups:

(i) Females who were placed at hire in nonexempt positions during the period February 16, 1969 to and including October 14, 1979;

(ii) Blacks who were placed at hire in nonexempt positions during the period February 16, 1969 to and including October 14, 1979; and

(iii) Blacks who were placed at hire in exempt positions during the period January 1, 1973 to and including October 14, 1979.

(b) A claimant in the above initial placement claim groups must further establish:

(i) That he or she falls within the description of one or more of these claim groups;

(ii) That at the time of his or her successful application for employment, he or she applied for or expressed interest in a higher-rated job or job category (*i. e.,* a job or job category having a higher salary range mid-point, a higher grade level or a higher Hay point evaluation) than the job for which he or she was hired;

(iii) That he or she was qualified for the higher-rated job or job category in which he or she expressed interest; and

(iv) The factual basis for computing the backpay or a reasonable estimate thereof owing to the claimant—*i. e.,* the amount of money claimed that the employee would have earned absent the Bank's discrimination minus the amounts of interim earnings and deductions for periods when the claimant was out of the workforce voluntarily and for reasons that would have prevented him or her from working at the Bank as well. This

proof requirement may change dependent upon the methods followed by the Master in any findings of gross earnings difference or other generic formulae.

19. (a) With respect to claims of discrimination in promotion, persons identified in accordance with Paragraphs 9–10, above, will be divided into the following claim groups:

(i) Females who were employed in nonexempt positions at any time during the period February 16, 1969 to and including October 14, 1979;

(ii) Blacks who were employed in nonexempt positions at any time during the period February 16, 1969 to and including October 14, 1979; and

(iii) Blacks who were employed in exempt positions at any time during the period January 1, 1973 to and including October 14, 1979.

(b) A claimant in the above promotion claim groups must further establish:

(i) That he or she falls within the description of one or more of these claim groups;

(ii) That he or she applied for or actively sought a promotion from a lower-rated job (*i. e.,* a job having a lower salary range mid-point, lower grade level, or lower Hay point evaluation) to a higher-rated job, or from the status of a non-officer to the status of an officer (whether or not resulting in an increase in pay), or from the status of a lower-level officer to a higher-level officer, but was not promoted; and

(iii) That he or she was qualified for the higher-rated jobs or status;

(iv) The factual basis for computing the backpay or a reasonable estimate thereof owing to the claimant—*i. e.,* the amount of money claimed that the employee would have earned absent the Bank's discrimination minus the amounts of interim earnings and deductions for periods when the claimant was out of the workforce voluntarily and for reasons that would have prevented him or her from working at the Bank as well. This

proof requirement may change dependent upon the methods by the Master in any findings of gross earnings differences or other generic formulae.

20. (a) With respect to claims of discrimination in hiring, persons identified in accordance with Paragraphs 9–10, above, will be divided into the following claim groups:

(i) Blacks who unsuccessfully applied for nonexempt positions during the period February 16, 1969 to December 31, 1973; and

(ii) Females who unsuccessfully applied for exempt positions during the period February 16, 1969 to December 31, 1974.

(b) A claimant in the above hiring claim groups must further establish:

(i) That he or she falls within the definition of one or more of these claim groups;

(ii) That he or she applied for employment at Republic National Bank and was not hired;

(iii) That he or she was qualified for the position or category of positions for which application was made; and

(iv) The factual basis for computing the backpay or a reasonable estimate thereof owing to the claimant—i. e., the amount of money claimed that the employee would have earned absent the Bank's discrimination minus the amounts of interim earnings and deductions for periods when the claimant was out of the workforce voluntarily and for reasons that would have prevented him or her from working at the Bank as well.

21. (a) With respect to claims of discrimination involving the Defendant's maternity policies and practices, persons identified in accordance with Paragraphs 9–10, above, will constitute a claim group consisting of females who were employed in both exempt and nonexempt positions during the period February 16, 1969 to and including December 31, 1970, and who were terminated or involuntarily placed on leave of absence during this period because of pregnancy.

(b) A claimant in the above maternity policies and practices claim group must further establish:

(i) That she was a female who was terminated involuntarily or was involuntarily placed on leave of absence from her employment with Republic National Bank during the period February 16, 1969 to and including December 31, 1970; and

(ii) The factual basis for computing the backpay or a reasonable estimate thereof owing to the claimant—i. e., the amount of money claimed that the employee would have earned absent the Bank's discrimination minus the amounts of interim earnings and deductions for periods when the claimant was out of the workforce voluntarily and for reasons that would have prevented her from working at the Bank as well.

22. As to each claimant presenting an individual claim for relief, Defendant may defeat such claim, or some part thereof, at the Stage II hearing by establishing that no discrimination occurred as to that claimant. In so establishing, Defendant may show that there was no vacancy at the time in question; that the claimant was not qualified for the position in question; that the "claimed" position was in fact filled by another minority or female; that the claimant was not better qualified than the person chosen; that similarly situated whites received the same or lower compensation than did claimant; that a pregnant employee's leave of absence or termination was voluntary, predicated on medical advice or consistent with requirements for other disabilities; or any other defense reasonably and legally efficacious to establish the absence of discrimination. Defendant may also defeat or reduce any backpay amount by proof of higher interim earnings, a willful loss of earnings by the claimant through the absence of due diligence and proof showing how claimant would have performed absent any discrimination, as well as other reasonable and legal defenses to backpay.

23. Upon the completion of the Stage II hearing, the Master shall have the responsi-

bility for determining as to each claimant who prevailed in establishing entitlement to individual relief, the scope of relief, including backpay or priority treatment such as preferential hiring or promotion, or other relief authorized by law and equity, which he finds necessary to remedy the discrimination. The Master shall prepare his findings in a Report and submit same to the parties and the Court. The Report shall specify the precise amounts of backpay owed to each individual and set forth the computation used to arrive at same. It shall also specify the nature of any other relief, explain the circumstances underlying the discrimination found, and set forth the applicable dates and the precise relief ordered. In making his findings the Master shall adhere to the following guidelines:

(a) A cutoff date for the computation of monetary and other individual relief shall be October 14, 1979;

(b) Monetary or other relief to individual claimants shall be computed from the first discriminatory incident found by the Master affecting that claimant after February 16, 1969;

(c) In determining the award of backpay, the Master shall not be expected to seek unrealistic exactitude, but should strive to ascertain that no undue windfall inure to either the discriminating or discriminated parties;

(d) Where more than one claimant is eligible for a single vacancy, the Master must assure that no backpay or priority award be granted to require Defendant to remedy more than the one vacancy;

(e) No liability of any kind can be attached for the time period subsequent to a claimant's termination, either voluntary or involuntary, from Defendant's employ;

(f) Probative evidence of historical work patterns among Defendant's workforce may be applied to recreate the employment situation as much as possible as it would have been absent any discrimination;

(g) No claimant who is a member of more than one subclass may obtain relief for more than one subclass for the same time period; and

(h) All backpay awards shall be subject to the computation of interest on net amounts due, based on the then-prevailing legal rate of interest, in accordance with the provisions of 28 U.S.C. § 1961.

24. Within forty-five (45) days of the Master's submission of his Report, the parties may file Exceptions to same with the Court. The Court will issue its Order approving, rejecting or modifying the Report, and setting forth any additional requirements necessary to effectuate the appropriate remedies to its Order.

25. This Court will retain jurisdiction over this action for the purposes of effectuating the terms of this Order until further Order.

## APPENDIX A

### NOTICE TO CLASS

To:  Black and Female persons who were employees of Republic National Bank of Dallas at any time during the period February 16, 1969 to and including October 14, 1979, and Blacks and Females who unsuccessfully applied for employment at Republic National Bank of Dallas during the period February 16, 1969 to and including December 31, 1974.

NOTICE OF YOUR RIGHTS IN LAWSUIT AND OF THE CHOICES YOU MUST MAKE TO PROTECT YOUR RIGHTS

PLEASE TAKE NOTICE that there is now pending in the United States District Court for the Northern District of Texas a civil action concerning discrimination in employment by the Republic National Bank of Dallas ("Bank") against blacks and females, titled "Vuyanich v. Republic National Bank of Dallas", Nos. CA–3–6982–G and CA–3–7949–G. On October 22, 1980, the United States District Court ("the court"), the HONORABLE PATRICK E. HIGGINBOTHAM, Judge, issued a Memorandum Order finding the Bank had discriminated in some

years in the hiring for some positions of some blacks (1969–1973) and females (1969–1974), in the placement and promotion of blacks and females, in the compensation of blacks (1973–1979) and in maternity practices affecting some women in 1969–1970. On _____, the Court issued a Decree which provides that all members of the above groups shall be provided an opportunity to advance individual claims for monetary relief and priority treatment in employment matters.

Please note that a claim of discrimination will not be entitled to consideration unless it falls within one of the following categories:

A. If you claim discrimination in *compensation*, (*i. e.*, if you are a black person, that you were paid less than whites performing substantially similar work to the work you were performing, because of your race), your claim will not be considered unless you are a *black* person who was employed in an *exempt* or *nonexempt* position at the Bank at any time during the period January 1, 1973 to and including October 14, 1979.

B. If you claim discrimination in *initial job placement* (*i. e.*, that you were hired by the Bank but were placed in a lower-paying job than one you expressed interest in and were qualified for, and that this placement occurred because of your race or sex) or in *promotional opportunity* (*i. e.*, that you sought a promotion to a higher-paying job but were denied the promotion because of your race or sex), your claim will not be considered unless:

1. You are a *female* person or a *black* person employed in a *nonexempt* job at the Bank at any time during the period February 16, 1969 to and including October 14, 1979; or

2. You are a *black* person employed in an *exempt* job at the Bank at any time during the period January 1, 1973 to and including October 14, 1979.

C. If you claim discrimination in *hiring* (*i. e.*, that you applied for employment at the Bank but were not hired

because of your race or sex), your claim will not be considered unless:

1. You are a *female* person who applied unsuccessfully for an *exempt* (professional, higher level administrative, or executive) position during the period February 16, 1969 to and including December 31, 1974; or

2. You are a *black* person who applied unsuccessfully for a *nonexempt* (other than exempt) job during the period February 16, 1969 to and including December 31, 1973.

D. If you claim discrimination in *maternity practices*, (*i. e.*, that you were terminated or placed on involuntary leave of absence from your job at the Bank because of pregnancy), your claim will not be considered unless you are a *female* person who was terminated or placed on involuntary leave of absence because of pregnancy during the period February 16, 1969 to and including December 31, 1970.

The purpose of this notice is to inform you that if you are a member of one of the above groups, you may have a claim for relief. However, you must act now to inform the Court that you believe you are entitled to the relief to be ordered in this case and that you want your claim for relief to be considered at this time. Failure to notify the Court of your claim for relief at this time will forever bar you from seeking such relief in the future for past employment discrimination by the Bank.

In its Decree, the Court has stated that injunctive relief will be available to some members of these groups to give them a priority status in terms of future employment decisions. The Court also ordered that further proceedings be held to determine the availability and amount of any backpay which may be necessary to compensate any member of any of the groups who has been harmed by the Bank's practices. If you are a member of one or more of these groups, and you want the Court to determine what, if any, relief you are entitled to in this litigation, you *must* fill out the accompanying Proof of Claim form completely, or copy the form on a clean sheet of paper, complete it and mail it to:

_____, Special Master
United States District Court for
  The Northern District of Texas
United States Federal Courthouse
1100 Commerce Street
Dallas, Texas 75202

It must be postmarked no later than _____. You may obtain a Proof of Claim form and a copy of this Notice by writing to the above person and address.

Every person who submits a Proof of Claim form will be required to appear and prove his or her claim by appropriate testimony and evidence and to prove what efforts he or she has taken to mitigate his or her damages, if any. Failure to submit a completed Proof of Claim form by _____ will forever bar you from seeking any relief upon a claim which this Court could have decided at the proceedings which will be held pursuant to its _____ Decree.

If you have any questions (such as whether you are affected by this litigation), please address a postal card or letter to the Special Master, Mr. _____ at the above address. He will contact you and refer you to plaintiffs' attorneys for a further explanation and legal advice.

---

PATRICK E. HIGGINBOTHAM
United States District Judge

## APPENDIX B

## PROOF OF CLAIM FORM

Instructions:

(A) The United States District Court for the Northern District of Texas, the HONORABLE PATRICK E. HIGGINBOTHAM, Judge, issued a Decree on _____, ordering that persons to whom the Republic National Bank of Dallas ("Bank") had been found liable for employment discrimination be given an opportunity to present their individual claims for monetary and other relief.

(B) The groups for whom liability was found are named in the "NOTICE TO CLASS" which accompanies this Proof of Claim form. If you do not have a copy of this Notice, please write and request one from:

_____, Special Master
United States District Court for
  The Northern District of Texas
United States Federal Courthouse
1100 Commerce Street
Dallas, Texas 75202

(C) In accordance with the Decree of _____, if you are a member of any one of the groups named in that Notice and wish to seek a claim for monetary or other relief, you *must* complete this Proof of Claim and mail it to _____ at the above address, postmarked no later than _____. If you do not fill out this form completely and mail it to _____ by the above date, you will be forever barred from seeking any relief for past employment discrimination by the Bank.

(D) Please read the accompanying "NOTICE TO CLASS" carefully before completing this form. Any questions regarding this Proof of Claim form or the Notice should be sent to _____ at the above address.

(E) All persons must sign and mail this form to _____ at the above address by _____.

1. Name of Claimant _____
                    (Last)      (First)      (Middle)

2. Address _____
          (Street)   (City)   (State)   (Zip)

3. Race (Circle One)      (Black)      (White)      (Other)

4. Sex (Circle One)      (M)      (F)

5. It is my sincere belief that Republic National Bank discriminated against me on the basis of my (race) (sex) [cross out inapplicable word, unless you are claiming discrimination based on *both* race and sex].

6. It is my sincere belief that Republic National Bank discriminated against me by (circle appropriate letter(s)):

   a. Failing to hire me when I applied;

   b. Placing me in a job lower than the type of job I applied for and was qualified for;

   c. Failing to promote me;

   d. (For blacks only). Failing to pay me as much as whites doing substantially similar work;

   e. (For women only). Terminating my employment because of pregnancy.

7. Approximate date(s) of the discrimination practiced against me: _____

8. [In your own words, please describe how you believe you were discriminated against by Republic National Bank]:

   _____

   _____

   _____

   _____

9. Please provide your name at the time you applied or were employed by the Bank if it has changed since then:

   _____    _____    _____
   (Last)                        (First)                      (Middle)

   I hereby certify that I have a *bona fide* claim of discrimination against Republic National Bank, as a remedy for which I claim entitlement to backpay and other remedial relief.

   _____
   Signature of Claimant

   _____
   Date